**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **RICKO HANKINS,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO. 5:22-cv-72 (MTT)** |
| | ) |
| **UNITED STATES FIRE INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

Plaintiff Ricko Hankins has moved for default judgment against Defendant United

States Fire Insurance Company ("U.S. Fire").  For the following reasons, that motion

(Doc. 6), as amended (Doc. 7), is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

The allegations of the complaint, deemed admitted because of U.S. Fire's

default, establish these facts.  U.S. Fire issued a policy of occupational accident

insurance to Hankins, which was in effect on May 29, 2019.  Doc. 1 ¶ 4.1.  On that day,

Hankins was injured in an auto collision while working, which is considered an

"occupational accident" as defined in the issued policy.  *Id.* ¶ 4.2.  Hankins incurred

injuries as a result of the accident that rendered him totally disabled.  *Id.* ¶ 4.3.  Under

the agreement between U.S. Fire and Hankins, U.S. Fire owed Hankins 104 weeks of

temporary disability payments.  *Id.* ¶ 4.4.  Hankins complied with all conditions

precedent for receiving disability payments under the contract with U.S. Fire and

provided all necessary documentation necessary for U.S. Fire to properly evaluate Hankins's claims under the policy. *Id.* ¶¶ 4.5-4.6.

On June 5, 2020, U.S. Fire began paying Hankins $996.18 every two weeks in temporary disability benefits. *Id.* ¶ 4.7. However, those payments stopped on September 22, 2020, after Hankins was only paid sixteen weeks of temporary disability benefits out of the 104 weeks he was owed under the policy. *Id.* ¶¶ 4.8-4.10. Hankins remains totally disabled as defined by the policy, and thus U.S. Fire owes Hankins the remaining eighty-eight weeks of temporary total disability payments. *Id.* ¶¶ 4.11-4.12.

Hankins is permanently and totally disabled as that term is defined for Social Security benefits under SSI. *Id.* ¶¶ 4.13-4.14. As of Hankins's forty-eighth birthday on June 5, 2022, he is entitled to permanent total disability payments until he turns seventy. *Id.* ¶¶ 4.15-4.17. Finally, the agreement between U.S. Fire provided for payment of Hankins's medical expenses incurred as result of the occupational accident within 104 weeks of the accident. *Id.* ¶ 4.18. Because U.S. Fire has only paid a fraction of these bills, Hankins claims he is entitled to the remainder. *Id.*

Hankins filed suit against U.S. Fire on February 15, 2022, alleging "breach of contract" and "bad faith" failure to pay an insurance claim under O.C.G.A. § 33-4-6. Doc. 1. U.S. Fire was served on March 3, 2022. Docs. 6-3 ¶ 3; 6-4. U.S. Fire failed to answer or otherwise defend and is now in default. Docs. 4; 5. The Clerk of Court, however, did not enter default judgment because the damages, as alleged in Hankins's complaint, were not a "sum certain." Doc. 5. Hankins then moved for default judgment. Doc. 6. After a preliminary review of that motion, the Court advised Hankins that additional briefing was required to determine whether the Court could award Hankins

the unaccrued future payments due under the disability policy in one lump sum, and if so, whether the Court must reduce such an award to present cash value.  Doc. 7 at 1. Hankins complied and amended his motion accordingly.  Docs. 7; 7-1; 7-2; 7-3.  The matter is now ripe for adjudication.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise."  After default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the Court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  The Court must hold an evidentiary hearing to determine damages unless all the essential evidence is already in the record.  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record."); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings[.]").

After the Clerk's entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations in the complaint.  *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]  However, an entry of default against the defendant does not establish that the plaintiff is entitled to a default judgment.  The defendant is not deemed to admit facts that are not well-pleaded or

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

conclusions of law.  *Id*.  "The Court must consider whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit a mere conclusion of law.  In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages."  *Johnson v. Rammage*, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)).  The defendant is also not deemed to admit the plaintiff's allegations relating to the amount of damages.  *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters.").

### III. JURISDICTION

To enter a valid default judgment, the Court must, of course, have both personal and subject matter jurisdiction.  *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.").  Here, the Court has subject matter jurisdiction over Hankins's claims based on diversity jurisdiction.  Hankins alleged he is a citizen of Georgia and the amount in controversy exceeds $75,000, while U.S. Fire is a foreign corporation with its principal place of business in New Jersey and incorporated under the laws of Delaware.  28 U.S.C. § 1332; Doc. 1 ¶¶ 1.1-1.3.

Moreover, the allegations sufficiently allege that the Court has personal jurisdiction over U.S. Fire.  Personal jurisdiction can be either general or specific.

General jurisdiction exists where a nonresident defendant's connections with the forum

state are "continuous and systematic" so as to render the nonresident defendant "at

home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation

and citation omitted).  Specific jurisdiction, on the other hand, must arise out of the

events or transactions underlying the claim that forms the basis of the lawsuit.  *Walden*

*v. Fiore*, 571 U.S. 277, 283-84 (2014).  In other words, for specific jurisdiction to be

proper, "the defendant must have 'purposefully availed' itself of the privilege of

conducting activities—that is, purposefully establishing contacts—in the forum state and

there must be a sufficient nexus between those contacts and the litigation."  *Diamond*

*Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)

(citations omitted).

Here, Hankins adequately alleged both general and specific jurisdiction over US.

Fire.  As to the former, Hankins alleged "U.S. Fire is authorized to do business in the

State of Georgia and has a registered agent in the State of Georgia" and U.S. Fire's

activities in Georgia are "continuous and systematic."  Doc. 1. ¶¶ 2.3, 2.5.  With respect

to the latter, Hankins alleged "U.S. Fire sold insurance to Plaintiff in Georgia in the form

of an occupational insurance policy," the contract at issue was entered into in the State

of Georgia, and "[t]he damage to Plaintiff and this cause of action arises out of U.S.

Fire's activities in Georgia."  *Id.* ¶¶ 2.1, 2.2, 2.4.  In sum, the Court has both subject

matter and personal jurisdiction over this matter.

## IV. DISCUSSION

Hankins's complaint asserts claims for "breach of contract" and "bad faith" failure

to pay an insurance claim under O.C.G.A. § 33-4-6.  Hankins has adequately alleged

liability as to both claims and is entitled to attorney's fees under O.C.G.A. § 33-4-6, but not expert fees and costs.  Further, Hankins has submitted sufficient evidence to support an award of $278,655.48 in breach of contract damages, $139,327.74 in bad faith damages, and $9,850.00 in attorney's fees.

**A. U.S. Fire's Liability**

*1. Breach of Contract*

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780, 784, 805 S.E.2d 270, 274 (2017).  Here, Hankins specifically alleged he entered into an agreement with U.S. Fire to make "certain payments to Plaintiff in the event of an injury resulting from an occupational accident."  Doc. 1 ¶ 5.1.  When that occupational accident occurred on May 29, 2019, U.S. Fire subsequently failed to make the required temporary disability, permanent total disability, and medical expense payments as required by the insurance contract.  *Id.* ¶¶ 5.3, 5.6.  These allegations are sufficient to entitle Hankins to default judgment on his breach of contract claim against U.S. Fire.

*2. Bad Faith Refusal to Pay a Claim*

Pursuant to O.C.G.A. § 33-4-6, a Plaintiff may recover damages for an insurer's bad faith refusal to pay a claim if (1) the claims are covered under the policy; (2) a demand for payment was made against the insurer within sixty days prior to filing suit; and (3) the insurer's failure to pay was motivated by bad faith.  *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19, 648 S.E.2d 433, 435 (2007) (citing

O.C.G.A. § 33-4-6).  Further, the statute requires the plaintiff to mail or deliver a copy of the demand and complaint by first-class mail to Commissioner of Insurance.  O.C.G.A. § 33-4-6(b).  Here, Hankins alleged his claims are covered by the "occupational accident" policy issued by U.S. Fire, that U.S. Fire refused to pay the loss within sixty days of a demand being sent, and that U.S. Fire's "refusal to pay was made in bad faith."  Doc. 1. ¶¶ 6.1, 6.2, 6.3.  Hankins also alleged he mailed a copy of the demand and complaint to the Commissioner of Insurance within twenty days of filing his complaint and thus has shown compliance with O.C.G.A. § 33-4-6(b).  *Id.* ¶ 6.5.  These allegations are sufficient to entitle Hankins to default judgment on his bad faith claim against U.S. Fire.

   *3. Attorney's Fees and Costs of Litigation*

   In relevant part, O.C.G.A. § 33-4-6 allows for "all reasonable attorney's fees for the prosecution of the action against the insurer."  As such, it is the "exclusive remedy for bad faith denial of benefits," and thus the exclusive vehicle for Hankins's recovery of attorney's fees.  *Montgomery v. Travelers Home & Marine Ins. Co.*, 360 Ga. App. 587, 595, 859 S.E.2d 130, 137 (2021).  U.S. Fire has failed to respond to Hankins's complaint and thus not shown that there was a bona fide controversy in this case. Therefore, Hankins has properly alleged that U.S. Fire has acted in "bad faith" in violation of O.C.G.A. § 33-4-6, and Hankins is entitled to reasonable attorney's fees as authorized by the statute.

   Georgia's bad faith statute does not, however, allow Hankins to recover expert fees and costs.  *See* O.C.G.A. § 33-4-6.  When interpreting Georgia statutes, the Court "'shall look diligently for the intention of the General Assembly.'"  *Chase v. Georgia*, 285

Ga. 693, 695, 681 S.E.2d 116, 118 (2009) (quoting O.C.G.A. § 1-3-1(a)).  "Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."  *Id.*  "Moreover, Georgia law provides that the express mention of one thing in an act or statute implies the exclusion of all other things."  *Id.*  In this respect, the Court "is not authorized to disregard *any* of the words [used therein] unless the failure to do so would lead to an absurdity manifestly not intended by the legislature."  *Id.* (emphasis and alteration in the original).  Finally, "forfeitures and penalties are not favored and statutes relating to them must be strictly construed, and in a manner as favorable to the person against whom the forfeiture or penalty would be exacted as is consistent with fair principles of interpretation."  *Anchor Motor Freight, Inc. v. Dep't of Transp.*, 199 Ga. App. 108, 109, 404 S.E.2d 148, 149 (1991) (internal quotation marks and citation omitted).

  "Since [O.C.G.A. § 33-4-6] imposes a penalty, its requirements are strictly construed."  *Am. Reliable Ins. Co. v. Lancaster*, 356 Ga. App. 854, 861, 849 S.E.2d 697, 702 (2020) (quoting *Lavoi Corp. v. Nat'l Fire Ins. of Hartford*, 293 Ga. App. 142, 146, 666 S.E.2d 387, 391 (2008).  Hankins cited no authority allowing recovery of expert fees and costs under Georgia's bad faith statute.  *See* Docs. 6; 7.  Indeed, the plain language of the statue is clear: it allows for "all reasonable attorney's fees for the prosecution of the action against the insurer."  O.C.G.A. § 33-4-6(a).  Nor can it be argued that expert fees are subsumed within attorney's fees—the statute expressly discusses expert witnesses within the context of determining bad faith but yet is silent as to the reimbursement of those fees.  *See id.*  The Court can only assume that if the General Assembly intended for expert fees to be reimbursable, they would have said

so.  The same goes for costs.  In other words, "expert fees" and "costs" make no appearance in O.C.G.A. § 33-4-6, and the Court sees no principled way to graft either term on the statute with no hint that the General Assembly sought fit to impose those expenses on the insurer.  Accordingly, U.S. Fire is only liable for Hankins's attorney's fees.

## B. Damages

### 1. Disability Payments and Medical Expenses

"The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed."  *Austin v. Bank of America*, N.A., 293 Ga. 42, 49, 743 S.E.2d 399, 405 (2013) (quoting *Redman Dev. Corp. v. Piedmont Heating & Air Conditioning, Inc.*, 128 Ga. App. 447, 451, 197 S.E.2d 167, 171 (1973)). "[A]s a general rule, where the action of the insurance company does not amount to a repudiation of the contract of insurance, but amounts merely to a refusal to pay, as required by the policy, sick benefits accruing under its terms, the right of action of the insured is governed by the policy itself, and he is entitled only to sue for and recover the amount of the benefits thus accruing."  *Indus. Health & Life Ins. Co. v. Buggs*, 59 Ga. App. 133, 200 S.E. 537, 539 (1938).  Put differently, "[w]here … the promise to pay is contingent upon the occurrence of a future event as well as the arrival of a future time, it is not an unconditional promise to pay until the issue of fact—whether or not the event will take place—can be determined with reasonable certainty."  *Cont'l Cas. Co. v. Stephenson*, 112 Ga. App. 666, 145 S.E.2d 825, 827 (1965).  Thus, when an insurance policy provides for payment solely by monthly installments, an insurer's refusal to pay

disability benefits in accordance with that policy does not authorize recovery of the future amount owed under the policy in one single cash payment. *Aetna Life Ins. Co. v. Dorman*, 51 Ga. App. 393, 180 S.E. 640 (1935).

Here, Hankins asks the Court to award $43,831.92 in temporary disability payments, $230,540.00 for outstanding medical expenses, and $416,078.60 in permanent total disability payments, reduced to present value. Doc. 7 at 9-10. The first two are easy. U.S. Fire owed Hankins 104 weeks of temporary disability benefits with payments that began on June 5, 2020, yet U.S. Fire paid only sixteen weeks of those benefits. Doc. 1 ¶¶ 4.8-4.10. Thus, that claim accrued on June 2, 2021, the time when the last disability benefit was due, and U.S. Fire is liable for $43,831.92 in unpaid temporary disability benefits, as supported by Hankins's affidavit. *See* Doc. 6-1 ¶ 6. Similarly, U.S. Fire's policy stated it would reimburse medical expenses incurred within 104 weeks of the accident. Doc. 1 ¶ 4.18. Accordingly, that claim accrued on May 26, 2021, 104 weeks after the accident, and Hankins is entitled to $230,540.00 in medical expenses that have yet to be paid as evidenced by the "medical damages report" submitted with his motion for default judgment. Doc. 6-1 at 4-27.

Hankins is not, however, entitled to the totality of his future permanent total disability payments as he requests. First, the policy expressly calls for payments to occur bi-weekly until Hankins reaches the age of seventy. Doc. 1 ¶¶ 4.15, 4.17. Of course, U.S. Fire has admitted by way of default that Hankins is permanently and totally disabled, and if there was any doubt, Hankins submitted an affidavit from a vocational rehabilitation and life care planning specialist to support that claim. Docs. 1 ¶¶ 4.13-4.14; 6-5. But what Hankins cannot prove with reasonable certainty is that he will live to

see the age of seventy, or that U.S. Fire will continue to refuse to make permanent total disability payments as required by the contract.  In other words, because U.S. Fire's actions constitute a mere breach of the insurance contract, rather than a repudiation of the parties' agreement, Georgia law dictates that Hankins is entitled to recover only those benefits already accrued under the policy.  *Stephenson*, 112 Ga. App. at 666, 145 S.E.2d at 826-27.  So, Hankins must not only be permanently and totally disabled, which has been established, but also be alive to receive the twice monthly payments as prescribed by the contract.  *See id.*

Hankins urges the Court to reach a contrary conclusion because U.S. Fire's refusal to pay was done in bad faith.  True, but U.S. Fire did not refuse to pay benefits yet due, in bad faith or otherwise.  In other words, a bad faith refusal to pay some benefits is not synonymous with a repudiation of the contract as a whole as Hankins suggests.  Further, the fact that Georgia law provides an additional remedy for bad faith refusal to pay has no impact on the scope of his breach of contract claim—bad faith is a separate remedy.  Hankins cites two cases which the Court will address.  In *Kafie v. Nw. Mut. Life Ins. Co.*, a Florida district court addressed whether the plaintiff, under Florida law, could recover unaccrued future benefits provided under a disability policy in a lump sum reduced to present value.  834 F. Supp. 2d 1354, 1362-64 (S.D. Fla. 2011). The district court reasoned that because the Florida bad faith statute allowed for recovery of "reasonably foreseeable damages," unaccrued benefits were recoverable as long as those future damages were reasonably foreseeable as a result of the defendant's bad faith refusal to pay under the policy.  *Id.* at 1363-64.  But "Georgia law is clear that improper claims handling is a matter of contract, not tort."  *Camacho v.*

*Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1363 (N.D. Ga. 2014) (citing *Tate v. Aetna Cas. & Sur. Co.*, 149 Ga. App. 123, 253 S.E.2d 775, 776 (1979).  So, under Georgia law, which clearly controls in this case, a bad faith refusal by the insurer to pay benefits as promised does not entitle the insured to the recovery of benefits yet to accrue.

Hankins's reliance on *Republic Bankers Life Ins. Co. v. Jaeger*, a Texas Supreme Court case, is similarly flawed.  551 S.W.2d 30 (Tex. 1976).  There, the court, accepting as true the trial court's finding of fact that the defendant repudiated the entire disability policy, awarded the plaintiff the remainder of amounts owed to him under the policy in one lump sum reduced to present value.  *Id.* at 31.  But again, that is Texas law—Georgia law is clear that refusal to pay disability benefits presently due does not constitute repudiation of the contract as a whole.  *See Stephenson*, 112 Ga. App. at 666, 145 S.E.2d at 826-27.

Finally, Hankins contends that such a rule puts him "in the position of having to sue on the disability policy in the future—after already having litigated the issue—if the insurer withholds benefits again."  Doc. 7 at 3.  Not true.  U.S. Fire's liability, by way of default, is established.  As of Hankins's forty-eighth birthday on June 5, 2022, Hankins is entitled to permanent total disability payments, as prescribed by the contract as "equal to 4.3 times Plaintiff's average weekly earnings multiplied by 0.70, subject to a maximum of $2,150 per month payable until Plaintiff reaches age seventy."  Docs. 1 ¶¶ 4.15-4.17; 6 ¶ 8.  In support of his motion, Hankins submitted an affidavit and averred he made an average of $711.56 per week.  Doc. 6-1 ¶ 7.  Thus, under the policy's formula, he is entitled to $2,141.78 a month in permanent total disability payments.  *Id.*

Because only two months of total disability benefits have gone unpaid, Hankins is presently only entitled to $4,283.56 in compensation for those unpaid benefits.  Should U.S. Fire fail to make future payments in accordance with the Court's judgment, there is a remedy for that.

In sum, Georgia contract law limits Hankins's recovery to damages that have thus far accrued.  Accordingly, Hankins is entitled to $278,655.48 in breach of contract damages, comprised of $43,831.92 in unpaid temporary disability benefits, $230,540.00 for outstanding medical expenses, and $4,283.56 in unpaid permanent total disability benefits.

### 2. Bad Faith Damages

Hankins is also entitled to bad faith damages pursuant to O.C.G.A. § 33-4-6. That statute provides, in relevant part, "the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater."  O.C.G.A. § 33-4-6(a).  But, as discussed above, Hankins's bad faith damages are limited the payments U.S. Fire has thus far refused to make in accordance with the policy.  Accordingly, Hankins is entitled to $139,327.74 in bad faith damages—fifty percent of the total damages accrued.

### 3. Attorney's Fees

Through his motion for default judgment, as amended, Hankins seeks $9,850.00 in attorney's fees, $350.00 in costs, and $7,490.20 in expert fees.  Docs. 7 at 10; 7-2 ¶ 5.  For the reasons discussed above, the plain language of O.C.G.A. § 33-4-6 does not allow for the recovery of costs or expert's fees.  Thus, for the purposes of

determining damages, only the $9,850.00 claimed attorney's fees are at issue.

Georgia's bad faith statute provides, in relevant part, that:

> The amount of any reasonable attorney's fees shall … be included in any judgment which is rendered in the action; provided, however, the attorney's fees shall be fixed on the basis of competent expert evidence as to the reasonable value of the services based on the time spent and legal and factual issues involved in accordance with prevailing fees in the locality where the action is pending.

O.C.G.A. § 33-4-6(a).  In other words, reasonable attorney's fees under O.C.G.A. § 33-4-6(a) are determined by the lodestar method.  *Cent. Baptist Church of Albany Georgia, Inc. v. Church Mut. Ins. Co.*, 2021 WL 8533678, at *4 (M.D. Ga. Sept. 30, 2021) (discussing attorney's fees under O.C.G.A. § 33-4-6).  "Under the lodestar method, courts determine attorney's fees based on the product of the reasonable hours spent on the case and a reasonable hourly rate."  *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Generally, a "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted).  "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quotation marks and citation omitted).

Hankins presented evidence of his attorney's fees through affidavits submitted by his counsel.  Docs. 7-1; 7-2.  Through those affidavits, Hankins seeks reimbursement of the partner's time at a rate of $250 per hour and the associate's time at a rate of $165 per hour.  Docs. 7-1 ¶ 5; 7-2 ¶ 5.  In both those affidavits, counsel, who practice in

Macon, aver their claimed rate "is both reasonable and below the prevailing rate for lawyers who have similar experience and expertise." *Id.* But as the statute makes clear, the reasonable hourly rate must be determined in accordance with the locality where the case was filed. O.C.G.A. § 33-4-6(a). The Court "is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1304 (citations omitted). Based on the Court's experience, both the partner's hourly rate of $250 and the associate's hourly rate of $165 are reasonable for attorneys practicing in the Macon area. *See Zediker v. OrthoGeorgia*, 857 F. App'x 600, 609-10 (11th Cir. 2021).

Turning to the reasonable hours expended, the Court similarly finds no issue. Courts should exclude "hours that were not reasonably expended," such as work that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Here, the partner avers he spent thirteen hours preparing the complaint, conducting document review, and preparing the motion for default judgment, as amended. Doc. 7-2 ¶ 5. Similarly, the associate expended forty hours on these tasks, the majority of which was spent researching and preparing Hankins's amended motion for default judgment. Doc. 7-1 ¶ 5. The Court finds none of this time was "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434.

In sum, the Court finds that the $9,850.00 in attorney's fees requested by Hankins is reasonable, and U.S. Fire is liable for that amount. Because O.C.G.A. § 33-4-6(a) does not permit recovery of expert fees or costs, U.S. fire is not liable for those expenses.

**V. CONCLUSION**

For the reasons stated above, Hankins's motion for default judgment (Doc. 6), as amended (Doc. 7), is **GRANTED in part** and **DENIED in part**.  Hankins is awarded $278,655.48 in breach of contract damages, $139,327.74 in bad faith damages, and $9,850.00 in attorney's fees.  In total, default judgment is entered against U.S. Fire in the amount of $427,833.22.  Further, U.S. Fire is **ORDERED** to pay Hankins $2,141.78 a month in permanent total disability benefits until Hankins reaches the age of seventy. U.S. Fire's failure to comply with this order may result in sanctions including a finding of contempt.

**SO ORDERED**, this 5th day of August, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT